### G. W. SAWYER AND OTHERS V. ALEXANDER BOYLE.

A decree of distribution of an estate necessarily involves the determination of the fact that all the distributees are living, but only incidentally so, as the basis of the decree ; the decree is therefore not conclusive of such fact, but it may be proved by any one whose interest warrants it, that one or more of the distributees were dead at the date of the decree ; and it makes no difference that the decree recites that such person was present in Court consenting thereto.

The fact that the record of the Probate Court in describing the distributees of an estate, designates different parties as entitled to the same purpart or share, to-wit : " the heirs and legal representatives of Leona Trammell," and " Leona Trammell" renders the record subject to explanation by the proof of facts to show who must have been intended ; and upon proof in such case, that Leona Trammell was dead at the date of the proceedings, it must be held that her heirs were intended and were the parties whose presence and representation by attorney, were recited in the decree.

Error from Fayette. Tried below before the Hon. James H. Bell.

The plaintiffs in error claimed and gave bond to try the right to a boy slave Frank, twelve years of age, levied on as the property of Nathaniel Trammell, at the suit of the defendant in error. The slave was taken in December, 1853, and

the claim was made on the 14th of January, 1854. The claimants gave in evidence a transcript from the Probate Court of Chicot county, Arkansas, in the matter of the succession of Britton Ward : entry showing petition of Stokely Ward, administrator of Britton Ward, in July, 1842, representing that there was more property than was required to pay the debts of said estate, and praying a distribution thereof as follows : to Stokely Ward one share ; to Rosa Bankston, formerly Ward, one share ; to Sally Terry, formerly Sally Ward, one share ; to the heirs and legal representatives of Squire Ward one share ; to the heirs and legal representatives of Huldah Burch, formerly Ward, one share ; to the heirs and legal representatives of Leona Trammell, formerly Ward, one share ; to Tensey Vessells, formerly Ward, one share ; to the heirs and legal representatives of Brinkly Ward one share ; petition refused ; re-hearing ; re-argument and taken under advisement. Same Term entry entitled Stokely Ward, administrator of the estate of Britton Ward, deceased, v. Rosa Bankston, Sally Terry, Leona Trammell, Stokely Ward, the heirs and legal representatives of Huldah Burch, the heirs and legal representatives of Squire Ward, the heirs and legal representatives of Brinkly Ward, Tensey Vessells, all heirs and legal representatives of Britton Ward, deceased. This day came the parties by their attorneys, &c. ; petition granted and final distribution ordered, " the parties themselves being present and consenting to the same ; it is ordered that the negro property on hand and other property on hand be forthwith equally divided between the heirs named in the motion of said complainant ; that is to Rosa Bankston, formerly Rosa Ward, one share ; Sally Terry, formerly Sally Ward, one share ; Leona Trammell, formerly Leona Ward, one share ; Stokely Ward one share ; the heirs and legal representatives of Huldah Burch, formerly Huldah Ward, one share ; to the heirs and legal representatives of Squire Ward

one share ; to the heirs and legal representatives of Brinkly Ward one share ; to Tensey Vessells, formerly Tensey Ward, one share, &c. ; dividing the property into eight lots, lot No. 3 to consist of Charlotte and Frank her infant child. &c. ; and the same entry showed that the division was approved by the Court, and that " the Court ordered the names of the " eight heirs aforesaid to be placed in one hat and the eight " lots in another, and the interest of each heir fairly drawn " for ; when by ballot drawn it appeared that Rosa Bankston " drew lot No. 1 ; that Sally Terry aforesaid drew lot No. 2 ; " that Leona Trammell drew lot No. 3 ; that Stokely Ward " drew lot No. 4 ; that Huldah Burch's heirs drew lot No. " 5 ; that the heirs and legal representatives of Squire Ward " drew lot No. 6 ; that Brinkly Ward's heirs and legal repre- " sentatives drew lot No. 7 ; and that Tensey Vessells drew " lot No. 8.    Therefore it is ordered, adjudged and decreed " by the Court, that each of the heirs aforesaid be and they " are hereby forever invested with the fee simple and separate " title to the negro or negroes and money which was by said " allotments and ballots set apart to them ; and that all right " and title to the same be forever divested out of the other " heirs who have drawn their separate shares in said allot- " ments as also out of all other persons whatever ; and it is " ordered, adjudged and decreed by the Court, that each of " the heirs or parties entitled to a share in the foregoing allot- " ments and division, shall, by themselves or legal representa- " tives, have the right to call upon the administrator or any " other person having the possession or custody of said prop- " erty and negroes, &c., take the same into their possession ; " to sue for and recover by any and all remedies known to " our laws ; to acquire possession and custody of their respec- " tive shares according to law, the legal possession of which " is hereby granted and adjudged to the parties, and to give " the administrator or other persons a receipt or release there- " for in their own right," &c.

There was also a copy of the motion or petition of Stokely Ward, as administrator, for distribution ; and in it, in naming the distributees, the words " the heirs and legal representa-" tives of Leona Trammell " were used.

Claimants introduced the depositions of Nicholas Trammell, Nathaniel Trammell and Green B. Baker, who testified that the plaintiffs were the children and grand children and heirs of Leona Trammell, deceased ; that Sarah and Elizabeth married G. W. and Edmond Sawyer, in 1847 ; that two of the infant plaintiffs are the children of Elizabeth who died in 1852 ; that Leona Trammell died in Spring of 1838 ; that at her death her children were all infants ; that Sarah was born November 29th, 1830 ; that Elizabeth was born January 18th, 1832; that Amelia E. was born May 12th, 1836 ; that Wm. H. was born March 11th, 1838 ; that Leona was the daughter of Britton Ward, who died about 15 or 18 months after the death of said Leona ; that Leona was residing, at the date of her death, about one hundred miles distant from the residence of her father ; that Charlotte and her infant boy Frank, the negro in controversy, belonged to said Ward at his death, and was set aside as the share of Leona Trammell, deceased, in the distribution of said Ward's estate ; that the said boy had remained in the possession of N. Trammell, the husband of said Leona and father of said plaintiffs, from said distribution, when he recovered him, till he was levied on by execution in favor of said Boyle ; that the said Ward had eight children, Squire, Stokely, Brinkly, Tursby, Huldah, Rosa, Sarah and Leona ; that the heirs had all acquiesced in the said distribution of said estate. Claimants introduced in evidence the Revised Statutes of Arkansas, adopted at the October session of the General Assembly of said State A. D. 1837, from which both parties read certain Sections of the laws of said State, and it is hereby agreed that the same may be referred to in the Supreme Court, without having the same copied in this statement of facts. Here claimants rested.

.

It was proven by the deposition of ———— that Leona Trammell, formerly Ward, was not the legitimate child of Britton Ward; that said Ward and the mother of Leona were never married; and it was proven by the statutes of Arkansas, that illegitimate children could not inherit except through their mother, in said State.

Thomas W. Harper testified that he knew the boy Frank; that Nat Trammell brought him to the county several years since, and always claimed him as his own property; heard him assert his claim years before said boy was levied upon, in the presence of his sons-in-law, the two Sawyers, and heard the Sawyers say that he belonged to Trammell; the boy Frank was notoriously known as the property of Nat Trammell; witness lived within one-half mile of Nat Trammell; never heard any doubts as to Trammell's title until the commencement of this suit; heard the Sawyers say that if they owned Frank they would not give him for any other negro they knew of; that the two Sawyers were living at the house of Nat Trammell at the time; heard Trammell claim negro Frank, and speak of him as his property frequently in the presence of the Sawyers, his sons-in-law.

C. B. King testified that he knew the boy Frank; Trammell had offered to sell him to witness while he was living in La Grange, some eighteen months or two years before the commencement of this suit.

J. S. Patton testified that he levied the attachment of Boyle on the boy Frank while in the possession of Trammell at his tavern in La Grange. Trammell always claimed the boy as his own property; the Sawyers, his sons-in-law, were frequently at Trammell's, and one of them was living with Trammell. The boy Frank was notoriously known as Trammell's property; never heard Trammell's title doubted until the commencement of this suit.

The Court instructed the jury as follows:

That if Leona Trammell was living at the time the distribution of the estate of Britton Ward was made by the Probate Court of Arkansas, then the portion of the estate of Britton Ward, which Leona Trammell could inherit, rested by the law of Arkansas in Nathaniel Trammell, her husband.

If the record of the Probate Court of Arkansas, which made the distribution of Britton Ward's estate, recites the fact that Leona Trammell was present in Court when the distribution was made, either in person or by attorney, then the recital of the record is conclusive evidence of that fact, and cannot be contradicted by other evidence.

If the language of the record of the Probate Court of Arkansas is ambiguous or of uncertain import, then parol or other testimony may be considered, in order to arrive at a proper construction of the language of the record, or in order properly to ascertain what the record recites.

If Leona Trammell died before her father, Britton Ward, then whatever portion of Britton Ward's estate Leona Trammell could inherit, if she had survived him, would descend to and rest in her children, without any interest on the part of Nathaniel Trammell, the husband of Leona attaching to the said inheritance.

Where a decree of a Court recites the prayer of a petition, the recital of the prayer of the petition is not evidence that the facts set forth in the petition are true.

If Leona Trammell was dead at the time of the decree distributing the estate of Britton Ward was made by the Probate Court in Arkansas, and her heirs were not present in Court, either in person or by guardian, when the decree was made, then the Court acted without jurisdiction as to them ; and the decree, as to them, was and is a nullity.

If the decree of the Probate Court in Arkansas did not vest title in these plaintiffs to the property in controversy, and if Leona Trammell was an illegitimate child of Britton

Ward, then these plaintiffs cannot inherit any portion of Britton Ward's estate.

A child, to be legitimate, must either be born in lawful wedlock, or the parents of such child must afterwards marry and recognise the child as their own.

If Nathaniel Trammell received the negro boy in controversy, from the estate of Britton Ward, as his own property, in right of his wife, then the claimants cannot recover in this suit.

If Nathaniel Trammell held the boy in controversy adversely to the claimants, or such of them as were of age or married, then such of the claimants as were of age or married for two years after such adverse possession commenced and before the institution of this proceeding, are barred of their claim by such adverse possession ; but such of the claimants as are under age or unmarried are not so barred.

The disability of marriage cannot be added to the disability arising from minority, to protect a party against the laws of limitation.

A mistake or error in a decree of a Court of competent jurisdiction, can only be corrected in the Court which rendered the decree.

The claimants requested the following instructions, which were refused :

The claimants ask the Court to charge the jury, that if they believe the heirs of Leona Trammell were made parties to the motion for distribution of the property of B. Ward, deceased, and that the said Leona Trammell had died before her father, B. Ward, they must find that the property became the property of the claimants.

If they believe that the heirs of Leona Trammell were made parties to the motion of distribution of the property of said estate, and that Leona Trammell had died before Britton Ward, the decree having been entered in the name of Leona

Trammell instead of the heirs of Leona Trammell, still that does not render the decree null ; but they, having been parties in fact to said proceeding, will hold under the decree.

Verdict and judgment for plaintiff in execution ; motion for new trial overruled, &c.

*B. Shropshire*, for plaintiffs in error. I. The heirship of the distributees of Britton Ward's estate was determined by the decree of a competent Court of the proper jurisdiction, and cannot be questioned in this case. (Sutherland v. De Leon, 1 Tex. R. 309, and cases cited ; Dancy v. Stricklinge, 15 Tex. R. 557, and cases cited.)

II. There was no evidence in the record nor elsewhere, that Leona was in Court, in person or by attorney ; it is clear that the words " the heirs and legal representatives of " were inadvertently omitted in the after part of the proceedings. The charge on that point was therefore erroneous, being calculated to mislead the jury. (Yarborough v. Tate, 14 Tex. R. 483 ; Earle v. Thomas, Id. 583 ; Hancock v. Horan, 15 Id. 507.)

III. The record shows that the heirs and legal representa tives of Leona Trammell were made parties by the petition or motion ; and the decree recites that the parties were present in Court. The decree has been acquiesced in by all the parties. The property passed into the hands of the father and natural guardian of the claimants. It was therefore erroneous to charge the jury that if the heirs of Leona Trammell were not parties to the decree, it was void as to them. They had a right, at all events, to acquiesce in it and claim the benefits of it, as against all strangers thereto.

IV. The motion for a new trial ought to have been sustained.

*Tate* and *McFarland*, for defendant in error. I. Trammell has claimed Frank in the presence of Sawyers and their wives

for four years prior to the institution of Boyle's suit, and he was notoriously known as his property.

II. It will be seen by reference to the decree, that Leona Trammell was the party really before the Court, and the Court declared that she herself was entitled to one share. It no where appears that any guardian *ad litem* was appointed to represent the heirs of Leona Trammell ; and it is clear from the decree, that the Court acted upon the presumption that Leona was alive. The decree is conclusive against all parties and their privies. It matters not that it was based upon facts which did not exist. It cannot now be brought in question on a collateral proceeding. If there was a mistake it could only be corrected by application to the Court in which it was rendered.

III. If the decree was a nullity on account of Leona being dead, (which fact we do not admit) and the plaintiffs in error should claim as heirs of Leona Trammell, we say that the testimony shows that she was illegitimate and could not inherit from her father Britton Ward.

The charges given to the jury we think were quite as favorable for the plaintiffs in error as they could have asked.

IV. The wives of Sawyers were barred by limitation, if indeed they had any title to Frank.


ROBERTS, J. The property in controversy certainly belonged to B. Ward before his death in the State of Arkansas. It was administered upon there by his son, S. Ward, as a part of his estate, and upon a distribution thereof, it was received from the administrator by Nathaniel Trammell, and, in that State and in this, retained by him from that time, which was in 1842, up to the time of the levy of Boyle's executions, in December, 1853.

The capacity in which Trammell received it is one of the principal matters in dispute. Appellants contend that he re-

ceived it as their property and as their natural guardian. Appellee contends that he received it in his own right by virtue of his being then the husband of Leona Trammell, as the distributive share of her father's estate, or that Leona being an illegitimate child, Trammell received it without any right, and has acquired a title to it by possession, or if the appellants were entitled to a share of B. Ward's estate in right of their mother and they were not represented by guardian or in person when the estate was distributed, the decree of distribution was as to them a nullity, and from which it follows, that Trammell and not his. children have whatever title to the property which his continued possession may confer.

One of the items of evidence to show in what capacity Trammell received the property, was a transcript of the record of the Probate Court of Arkansas relating to the distribution of said Ward's estate. This shows that the administrator filed a petition for a distribution, in which he names the several parties who are entitled to distributive shares of the estate, and among them "the heirs and legal representatives of Leona Trammell." This petition is finally granted and in pursuance thereto the Court makes an order of distribution, and in the order the name of Leona Trammell appears as one of the distributees, leaving off the designation "the heirs and legal representatives of" as indicated in the administrator's petition. The negro in controversy is part of the property set apart as the share of Leona Trammell by said order. It was also shown that Leona Trammell died before her father B. Ward died, and that he was never married to her mother, and that by the laws of Arkansas illegitimate children could not inherit except through their mother.

The leading matters adjudicated in this order of the Probate Court were :

1st. That the estate should be distributed.

2nd. That the persons named were entitled to distributive shares of it.

3rd. That each distributee should hold in severalty the portion set apart.

Now as to whether one of these distributees, who were entitled as children of B. Ward, was then dead or alive, was a fact necessarily involved in the scope of the adjudication, but only incidentally so. That Leona Trammell was such child and so entitled as one of the eight distributees was adjudged. That established her heirship to the property set apart to her conclusively, except the contrary was shown by appeal or other direct proceeding by some party then having an interest in that property. The decree was founded on the basis of her then being alive. But that was not an issue which was specially tried, nor was it one of the leading objects of the adjudication. If she happened then to be dead, her heirs might adopt the division, and claim the share set apart to her. And if they did so the other distributees would not be injured and would have no right to complain. No one else could complain that the decree took for granted an incidental fact, which did not exist so as to defeat or annul the distribution. It may be asked, who was competent to try the issue of whether she was dead or alive, so as to make that determination conclusive? Those of course who were her minor heirs or claim to be; and her husband Nathaniel Trammell. Their interests in this issue would be adverse. The other distributees would have no interest in this issue otherwise than an incidental one. Therefore it is clear, that, with reference to the parties and object of this adjudication, the question of whether Leona Trammell was living or not, was merely incidental, and is not conclusively established by it, as against persons claiming to be then her minor heirs who were not then represented.

So too the fact of her appearance in Court at said adjudication, being recited in the decree, may be evidence of her then being alive, but it is not conclusive for the same reason,

it being a mere incident and not the main object of the decree. (1 Greenleaf Ev. Sec. 528 and references ; Id. 550.)

The effect of this record was to establish conclusively that Leona Trammell (or her heirs, if she were dead, and they adopted the distribution) was entitled to a distributive share of B. Ward's estate.

Secondly it might establish *prima facie*, but not conclusively, that she was alive.

The most reasonable explanation of it, considering the petition of the administrator and orders of the Probate Court founded thereon, is that Nathaniel Trammell was present and represented the interest in her share of the estate. If she were then really dead, and he concealed that fact, he cannot avail himself of his fraud as against her minor heirs. Or if the designation of " the heirs and legal representatives of " was dropped from before the name of Leona Trammell, by mistake or inadvertance of the Clerk in entering the order, that could not be held to change the existence of a fact which had transpired, and which affected the interest of minors not there represented.

The fact, that the record designates two parties to take this share to-wit : " the heirs and legal representatives of Leona " Trammell " and " Leona Trammell," renders it subject to explanation by the proof of facts to show who must have been intended. (Greenleaf Ev. Sec. 301.)

Upon the subject of the plea of the Statute of Limitations, it appears that Trammell was in the adverse possession of this property for several years, but no definite period of time is fixed by the witnesses. That could not operate as a bar to the rights of the minor children of Leona Trammell. (Wade *ex ux.* v. Johnson, 5 Humph. 117 ; Angel on Lim. Sec. 484.)

The Sawyers were married to their wives in 1847, who were then infants ; and were then not barred of their rights. If Trammell's adverse possession commenced before that time, the Statute of Limitations would then have commenced to

run ; but if his adverse possession commenced after that time, they were protected from the operation of the Statute by their coverture.

Without adverting more minutely to the several questions in the case, as presented by the record, it will be seen, from the view here taken of them, that the Court below erred in the instructions given to the jury. Judgment is reversed and cause remanded.

Reversed and remanded.